UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

Patrick Fioriglio,

       Debtor.

Chapter 13

Case No. 1-16-40602-nhl

-------------------------------------------------------------x

# **DECISION ON JOINDER TO MOTION TO DISMISS**

Appearances:

| | |
|---|---|
| Ehsanul Habib | Bruce Weiner and |
| Law Office of Ehsanul Habib | Robert Nadel |
| 118-21 Queens Blvd. Suite 603 | Rosenberg Musso & Weiner LLP |
| Forest Hills, NY 11375 | 26 Court Street, Suite 2211 |
| | Brooklyn, NY 11242 |
| *Counsel for Patrick Fioriglio* | |
| | *Counsel for Howard A Balsam* |

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

This matter is before the Court on the joinder of secured creditor Howard Balsam ("Balsam") to the motion to dismiss the chapter 13 case of Patrick Fioriglio (the "Debtor") filed by chapter 13 trustee Marianne DeRosa (the "Trustee"). Aff. in Supp. of Joinder, ECF No. 57; Mot. to Dismiss, ECF No. 52. Balsam asserts that the Debtor is ineligible to be a debtor under chapter 13 because his secured debts exceed the limit imposed by 11 U.S.C. § 109(e).[1] As set forth below, the Court agrees that the Debtor is ineligible under § 109(e), and this case will be dismissed unless the Debtor chooses to convert it.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

On February 16, 2016, the Debtor, acting *pro se*, filed a voluntary petition for relief under chapter 13 (the "Filing Date"). *See* Petition, ECF No. 1. On March 1, 2016, he filed a set of schedules (the "March 1 Schedules") and a chapter 13 plan. The March 1 Schedules show, in relevant part, that the Debtor owns two pieces of real property as a tenant in common, one located at 3801 Oceanview Avenue, Brooklyn, New York (the "Brooklyn Property"), and another located at 45 Shannon Boulevard, Yaphank, New York (the "Yaphank Property," and, together with the Brooklyn Property, the "Properties"). Mar. 1 Scheds. 3, ECF No. 9. His Schedule D reflects that no creditors have claims secured by any of the Debtor's property, including the Properties. *Id.* at 15. However, located between Schedules I and J is a copy of a

---

[1] 11 U.S.C. §§ 101 *et seq.* may be referred to throughout as the "Code." References to "§ ___" are to sections in the Code unless otherwise specified.

2

Mortgage Account Statement issued by Ocwen Loan Servicing (the "Ocwen Mortgage Statement"), which shows a mortgage on the Brooklyn Property with a principal amount of $950,642.89. *Id.* at 30. Apart from the Ocwen Mortgage Statement, the March 1 Schedules include only one scheduled claim—a nonpriority unsecured claim for $128,000 held by Balsam based on a "judgment of foreclosure." *Id.* at 20.

On April 6, 2016, Balsam, who is an attorney, but was, like the Debtor, proceeding *pro se*, filed a motion for relief from the automatic stay pursuant to § 362(d) of the Code with respect to the Brooklyn Property (the "Lift Stay Motion"). ECF No. 17. The Lift Stay Motion explains that Balsam holds a second mortgage on the Brooklyn Property, and had commenced a pre-petition foreclosure action against the Debtor in New York State Supreme Court, Kings County. *Id.* at 1–5. It also notes a first mortgage with a principal balance of $952,642.89 encumbering the Brooklyn Property. *Id.* at 10. The Lift Stay Motion was granted in part, and the balance is still pending before the Court. *See* Order, ECF No. 45.

On July 7, 2016, Ehsanul Habib filed a notice of appearance as counsel of record for the Debtor.[2] ECF No. 27. On that date, the Debtor filed a set of amended schedules (the "Amended Schedules") and an amended chapter 13 plan (the "Amended Plan"). Am. Scheds., ECF No. 28; Am. Plan, ECF No. 29. Schedule A of the Amended Schedules includes the Properties, but lists the entire value of the Yaphank Property as $0.00. Am. Scheds. 4, ECF No. 28. The entry for the Yaphank Property also includes a note that reads, "Joint ownership with former spouse-Debtor is

---

[2] Prior to Ehsanul Habib's retention, on May 6, 2016, Joshua Bernstein filed a notice of appearance as counsel of record for the Debtor. ECF No. 21. However, in light of an Order issued on April 2, 2002 by the Hon. Edward R. Korman that "disbarred [Bernstein] from the practice of law" in the Eastern District of New York, the Court declined to permit him appear as counsel of record to the Debtor pending a separate hearing and contrary determination. *See* June 9 Tr. 1–10, 24–25, ECF No. 25. On July 16, 2016, the Court issued an Order to Show Cause to that effect, which is still pending. *See* Order to Show Cause, ECF No. 37.

not on the Note for the subject loan." *Id.* Schedule D, however, shows no claim secured by the Yaphank Property. *See id.* at 13.

What the amended Schedule D does show is $1,093,493 in secured claims, including a first mortgage on the Brooklyn Property in the amount of $950,415 attributed to Ocwen Loan Servicing, and a second mortgage on the Brooklyn Property in the amount of $108,082 attributed to Balsam. *Id.* Additionally, amended Schedule E/F shows $351,000 in general unsecured claims. *Id.* at 14–16.

By the time that the Amended Schedules were filed, the claims docket reflected proofs of secured claims totaling $982,387.75, and proofs of unsecured claims totaling $282,557.65. The secured total includes a proof of claim filed by Deutsche Bank National Trust Company, as Trustee, c/o Ocwen Loan Servicing LLC, showing a claim secured by the Brooklyn Property in the amount of $951,382.90. *See* Proof of Claim No. 6-1. The unsecured total includes a proof of claim filed by the Department of Education/MOHELA in the amount of $278,112.56, *see* Proof of Claim No. 3-1, while the Debtor's Amended Schedule E/F lists that creditor with a claim in the lesser amount of $250,000. *See* Am. Scheds. 14, ECF No. 28.

The Debtor's Amended Plan reflects an intent to seek a declaration that the junior mortgage lien held by Balsam should be treated as a general unsecured claim because the senior mortgage held by Ocwen Loan Servicing exceeds the value of the Brooklyn Property. Am. Plan, ECF No. 29. On the same day that the Amended Plan was filed, the Debtor commenced an adversary proceeding against Balsam seeking that relief. *See* Compl., ECF No. 30. That adversary proceeding is still pending. *See* Case No. 16-01125-nhl.

On September 27, 2016, the Trustee moved to dismiss the case pursuant to § 1307(c), alleging that the Debtor's Amended Plan was insufficient to pay secured claims in full, and that

the Debtor had failed to make certain disclosures and timely plan payments. Mot. to Dismiss, ECF No. 52. Shortly thereafter, on October 14, 2016, Rosenberg, Musso & Weiner, LLP filed a notice of appearance as counsel for Balsam. ECF No. 53. On December 2, 2016, Balsam filed the joinder (the "Joinder") to the Trustee's Motion to Dismiss. Aff. in Supp. of Joinder, ECF No. 57.

The Joinder asserts that the Debtor excluded from his Amended Schedules a mortgage lien on the Yaphank Property (the "Yaphank Lien") in the amount of $245,532.32, *id.* at ¶ 5, and when this secured claim is added to Balsam's scheduled claim of $108,000 and the $951,382.90 claim filed by Ocwen Loan Servicing, the Debtor's secured debt exceeds the "$1,184,200 jurisdictional limit . . . allowable in chapter 13 case," *id.* at ¶ 7. Balsam asserts that while the Debtor did not sign the note or mortgage that gave rise to the Yaphank Lien, he nevertheless has a 50% ownership interest in the Yaphank Property, and under the Sixth Circuit Court of Appeals Decision in *In re Glance*, 487 F.3d 317 (6th Cir. 2007), a lien on property owned by a debtor gives rise to a secured debt that must be counted under § 109(e), regardless of whether the debtor is personally liable on the note.

Balsam provided a copy of the mortgage on the Yaphank Property that shows a principal balance of $365,750. Mortgage 2, ECF No. 76-1. On October 17, 2017, Wells Fargo Bank, N.A. ("Wells Fargo") filed a motion for relief from stay with respect to the Yaphank Lien. ECF No. 78. The Relief from Stay Worksheet filed with that motion, as required by E.D.N.Y. General Order No. 533, shows a principal balance of $363,743.13 as of the Filing Date. *Id.* at 49.

The Debtor does not dispute that he has an ownership interest the Yaphank Property or the fact that it is encumbered by a mortgage for which he is not the mortgagor. Instead, he raises three key points in his opposition to the Joinder: that eligibility for chapter 13 should be

determined based solely on the schedules; that Balsam's challenge to eligibility is barred by laches because it was filed nine months after the Filing Date, and the Debtor's ineligibility should have been clear from the schedules filed; and, finally, that the Yaphank Lien cannot be included among the secured debts because the Debtor is not personally liable on the note. *See* Opp'n, ECF No. 58.

## DISCUSSION

*The Debtor's Eligibility Under 11 U.S.C. § 109(e)*

Section 109(e) of the Code provides, in relevant part, that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). The debt limits imposed by this provision are subject to adjustment every three years after April 1, 1998. *See* 11 U.S.C. § 104(a) ("On April 1, 1998, and at each 3-year interval ending on April 1 thereafter, each dollar amount in effect under sections 101(3), 101(18), 101(19A), 101(51D), 109(e), 303(b), 507(a), 522(d), 522(f)(3) and 522(f)(4), 522(n), 522(p), 522(q), 523(a)(2)(C), 541(b), 547(c)(9), 707(b), 1322(d), 1325(b), and 1326(b)(3) of this title and section 1409(b) of title 28 immediately before such April 1 shall be adjusted . . . ."). The most recent adjustment, which resulted in § 109(e)'s current limits, quoted above, went into effect on April 1, 2016. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code, 81 Fed. Reg. 8748 (Feb. 22, 2016). Those increases, however, "do not apply to cases commenced before the effective date of the adjustments." *Id.* That includes this case, which was commenced on February 2, 2016. Accordingly, the current § 109(e) limitations, relied on by the parties here, are inapplicable.

Instead, the prior limits of $383,175 for unsecured debts and $1,149,525 for secured debts must be used to determine the Debtor's eligibility. *See id.*

In making this determination, the Court is not limited to a review of the Debtor's schedules. *See, e.g.*, *In re Shukla*, 550 B.R. 204, 211 (Bankr. E.D.N.Y. 2016) ("Though a [s]ection 109(e) analysis generally begins with a review of the debtor's schedules, a court may also consider materials outside of the debtor's schedules." (quoting *Stebbins v. Artificial Horizon, Ltd.*, No. 15-CV–1196 (JFB), 2016 WL 1069077, at *4 (E.D.N.Y. Mar. 17, 2016))). The schedules, while important, are not binding, and must be considered along with "all readily available evidence, including claims filed, any liens that are obviously avoidable, and the like." *In re Garcia*¸ 520 B.R. 848, 853 (Bankr. D.N.M. 2014); *see In re Barcal*, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997) ("At a hearing on eligibility, the court should [] canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.").

Here, the determination should include not only a review of the schedules and proofs of claim filed, but also the mortgage on the Yaphank property presented first by Balsam, and later by Wells Fargo in support of its motion for relief from stay. *See* Mortgage 2, ECF No. 76-1; Mot. for Relief from Stay, ECF No. 78. The Debtor cannot avoid consideration of the Yaphank Lien solely because he omitted it from his schedules, even if that omission was made on the good faith belief that his lack of personal liability meant that it did not belong there. *See* Opp'n 5, ECF No. 58 ("Since debtor is not responsible for the debt . . . he was not required to list [it] as his debt on schedule D . . . ."); *see also Shukla*, 550 B.R. at 211 (noting that the Court need not find an absence of good faith as a predicate to looking beyond the schedules); *Barcal*, 213 B.R. at 1015

("[T]he court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor . . . .").

Of course, this begs the question at the center of the parties' dispute: even if the Yaphank Lien may be considered for the purpose of § 109(e), is it relevant to that determination if the Debtor is not personally obligated on the underlying note? This must be answered in the affirmative. After the parties filed their briefs on this question, this Court issued a decision in *In re Abreu*, Case No. 1-15-44844-nhl, 2017 WL 4286141 (Bankr. E.D.N.Y. Sept. 25, 2017). There, it was held that a mortgagee was the holder of a "claim" within the meaning of §§ 101(5) and 1322(b)(2) to the extent that it had an *in rem* right against property owned by a debtor. *Abreu*, 2017 WL 4286141, at *4–6. *Abreu*'s holding applies squarely to the issue here.

It is undisputed that the Yaphank Lien is enforceable against the Yaphank Property, which is owned in part by the Debtor. To the extent that this is the case, *Abreu* dictates that Wells Fargo holds a claim against the Debtor's estate. *See id.*; *see also* 11 U.S.C. § 101(5) ("The term 'claim' means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . ."); 11 U.S.C. § 102(2) ("'[C]laim against the debtor' includes claim against property of the debtor . . . ."). The terms "debt" and "claim," as they appear in the Code, are "flip sides to the same coin." *In re Prosper*, 168 B.R. 274, 278 (Bankr. D. Conn. 1994) (quoting *In re Rifkin*, 124 B.R. 626, 628 (Bankr. E.D.N.Y. 1991)). That is to say, "[t]he terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." *Prosper*, 168 B.R. at 278 (quoting S.Rep. No.

989, 95th Cong., 2d Sess. 23 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5809). Accordingly, if Wells Fargo holds a claim, then the Debtor owes Wells Fargo a correlative debt. In turn, that debt, to the extent that it is noncontingent and liquidated, is counted against the secured debt limit under § 109(e). *See* 11 U.S.C. § 109(e).

The Debtor has also asserted that the Yaphank Lien, if found to be a debt, is a contingent debt. Opp'n 12, ECF No. 58. However, this position is not supported by case law. A debt is noncontingent "when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." *In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997); *see also Glance*, 487 F.3d at 322 (quoting *Mazzeo*). Here, Wells Fargo's security interest in the Yaphank Property arose pre-petition by virtue of the Yaphank Lien, and the party's *in rem* rights are therefore not dependent on any future, post-petition event. *See Glance*, 487 F.3d at 322 (finding that a debt was noncontingent where "no future events need[ed] to occur in order for the creditors to have an interest in [the debtor's] properties," and the claims were secured "long before [the debtor] sought bankruptcy protection").

The Yaphank Lien is therefore both subject to consideration for the purpose § 109(e) and counts towards the applicable secured debt limit of $1,149,525; it also puts the Debtor over that limit, even when using the most generous figures available. *See* 11 U.S.C. § 109(e); Revision of Certain Dollar Amounts in the Bankruptcy Code, 81 FR 8748. When only the pre-petition principal balance of $363,743.13 is added to the Debtor's scheduled secured debts of $1,093,493, the Debtor's total noncontingent, liquidated secured debts total $1,457,236.13—$307,711.13 over the limit.[3]

---

[3] It should also be noted that none of this takes into account the possibility that Balsam's claim, which is wholly unsecured on the face of the Debtor's amended schedules, might be treated as such solely for the purpose of § 109(e). *See, e.g.*, *Shukla*, 550 B.R. at 211–213 (adding unsecured portion of a claim to the unsecured debt total for the purpose of § 109(e)). In such a situation, the Debtor would exceed both the unsecured and the secured debt limit.

This conclusion does not trigger automatic dismissal, however, because §109(e) is not jurisdictional. *See, e.g.*, *In re Brinton*, Case No. 2:17–cv–1105–DB, Bankruptcy Case No. 16-27945, 2018 WL 922363, at *3–4 (D. Utah Feb. 15, 2018) (noting that a majority of courts to consider the issue of whether § 109(e) affects the jurisdiction of the court have found that it does not, and agreeing with that conclusion); *In re Toronto*, 165 B.R. 746, 756 (Bankr. D. Conn. 1994); *accord Rudd v. Laughlin*, 866 F.2d 1040, 1041–42 (8th Cir. 1989); *In re Phillips*, 844 F.2d 230, 235 n.2 (5th Cir. 1988); *In re Wenberg*, 94 F.2d 631, 636 (B.A.P. 9th Cir. 1988), *aff'd*, 902 F.2d 768 (9th Cir. 1990); *see also In re Zarnel*, 619 F.3d 156, 169 (2d Cir. 2010) (finding that § 109(h) is not jurisdictional, and that such a finding is consistent with other courts' conclusions that various subsections of § 109 are not jurisdictional). Instead, it is something that "must be established to sustain a voluntary bankruptcy proceeding." *Zarnel*, 619 F.3d at 169. That being the case, the Court may, and will, consider the Debtor's argument that Balsam's assertions related to § 109(e) are barred by laches.

*Applicability of Laches*

The doctrine of laches "bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *In re Jemal*, 496 B.R. 697, 703 (Bankr. E.D.N.Y. 2013) (quoting *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997)). The Debtor has asked the Court to find that the doctrine should be applied to Balsam here because his nine-month delay between the Filing Date and the date of the Joinder is unreasonable (i) in light of the fact that he is an attorney who should, for that reason, "be held to a higher standard while determining his ability to understand bankruptcy schedules" and (ii) because the Debtor's "ineligibility was [] apparent from the schedules as

10

debtor annexed [a] copy of the mortgage statement with his schedules on March []1, 2016, reflecting [the] mortgage balance on the first mortgage." Opp'n 9–10, ECF No. 58.

The argument misses the point. What put the Debtor over the secured debt limit was not the first mortgage on the Brooklyn Property, but the mortgage on the Yaphank Property, which was not so much as mentioned until July 7, 2016, where it appeared in a passing reference in the Debtor's amended Schedule A. *See* Am. Scheds. 4, ECF No. 28. ("Joint ownership with former spouse-Debtor is not on the Note for the subject loan."). While this virtually hidden reference might have been sufficient to put Balsam on notice of the Yaphank Lien, it would not, on its own, have shown that the Debtor's secured debts exceeded the § 109(e) limit. It also came five months after the Filing Date, meaning that almost half of the alleged delay was, in large part, attributable to the Debtor.

Moreover, from that point forward, some additional amount of time would have been required for Balsam to track down the mortgage and determine that it put the Debtor over the debt limit.[4] He also would have had to do this while beginning to defend against the adversary proceeding that the Debtor commenced, all while still *pro se*. Even though Balsam is an attorney, and is not necessarily entitled to the special considerations afforded *pro se* litigants, *see Harbulak v. Suffolk Cty.*, 654 F.2d 194, 198 (2d Cir. 1981), it strains credulity to suggest that he "sle[pt] on [his] rights" when his recognition of those rights depended on following a trail of bread crumbs left by the Debtor. *Ivani*, 103 F.3d at 259. After all, once Balsam retained counsel, only two months passed before the Joinder was filed. Under the circumstances, Balsam's delay is neither unreasonable nor inexcusable.

---

[4] It should also be noted that, because the Yaphank Lien was excluded from the March 1 Schedules and the Amended Schedules, the holder of that lien would not have been notified of the commencement of this case. Indeed, Wells Fargo did not appear on the initial creditor matrix, and did not file a notice appearance until March 16, 2017, a year after the Amended Schedules were filed. *See* ECF No. 63.

Additionally, regardless of how one characterizes the timing of the Joinder, it was not the cause of prejudice to the Debtor. The Trustee's motion to dismiss is rooted in the Debtor's own inability to meet chapter 13's requirements. The Debtor has not yet filed a confirmable plan, and is frequently behind in his plan payments to the Trustee.[5] *See, e.g.*, June 14 Tr. 6:19–20, ECF No. 67 (noting five months of arrears); Mot to Dismiss, ECF No. 20 (noting arrears); Mot to Dismiss, ECF No. 52 (same). Further, to the extent that any such plan would be confirmable because the stay has now been lifted as to the Yaphank Property, *see* ECF No. 82, this late development was made possible, at least in part, *because* of the fact that Balsam did not seek dismissal sooner. In that way, it might be said that Balsam's delay has actually benefitted the Debtor.

Finally, the Debtor's argument that he is prejudiced because he has spent time and money over the course of the last year under "the assumption that [he] could obtain relief under chapter 13" is unavailing. Opp'n 11, ECF No. 58. As noted above, the Debtor did not include the Yaphank Lien in his schedules because he was under the impression that he did not need to. That he proceeded under a mistake of law in this way should not be held against Balsam.

Laches cannot be used to prevent Balsam from seeking dismissal based on the amount of the Debtor's secured debt.

---

[5] The Debtor has since cured the disclosure deficiencies, though not without delay. *See* Feb. 7, Tr. 8:11–23, ECF No. 70.

## CONCLUSION

For the reasons set forth above, the Court finds that the Debtor's secured, noncontingent, liquidated debts exceed the applicable limit set by § 109(e). Accordingly, the Court will dismiss this case but stay dismissal for 30 days from entry of this Decision, in which time the Debtor may file a motion to convert this case to one under chapter 7 or 11. If such a motion has not been filed by the 31st day, Balsam is directed to upload an Order dismissing the case in accordance with the findings in this Decision.

**IT IS SO ORDERED.**



Dated: March 27, 2018
Brooklyn, New York

Nancy Hershey Lord
United States Bankruptcy Judge